First case up this afternoon is People v. Quentin Bates, 416-0255. The attorney is Emily Elizabeth Filpi. Is that pronounced correctly? Thank you. And with that, you may proceed. Good afternoon, your honors, counsel. Today I will focus my remarks on the first and the third issue raised in the briefs. Defense counsel sat back while the state played a 96-minute long interrogation video filled with Bates' meandering, crass recounting of his lying and that his DNA connected him to multiple other assaults throughout the state of Illinois. Counsel's failure to move to suppress this video was ineffective and requires this court to remand for no trial. First, the video had zero relevance or probative value. The video wasn't relevant as the detectives never asked Bates about whether he sexually assaulted anyone on September 19, 2011, the date of the offense for which he was on trial. They don't narrow down the questions and they don't specifically ask about the offense against AP. It also lacked probative value. During the first half of the video, again, the detectives refused to provide a date, a time, an exact location, or the accuser's name, leaving the interrogation vague and wide-ranging. Bates repeatedly asks for details and when they're not forthcoming, he dives into this meandering recitation of his sexual exploits, detailing various positions, partners, and places. He specifically talks about his sexual adventures with eight named women, but also says that he's had sex with Bates. But have there been any rationale for the court to allow this into evidence had there been an objection, a proper objection? Yes, Your Honor. What would have it been? It would have been that it wasn't relevant and that the prejudicial effect of this video substantially outweighed the probative value. What an excellent way for the defense, however, to have their client adamantly deny, regardless of the nature of the allegations placed against them, any involvement in this offense at all, but not have to take the stand. But we know this wasn't counsel's strategy. We know this because counsel admitted that the reason he didn't file a motion to suppress is not because he didn't think that the court would grant the motion, not because he didn't think that he wanted the video to come in or that he wanted to use this video. Also, the technical... Didn't he use it, though, in the closing argument? He talked about it for a paragraph, which, as the Illinois Supreme Court acknowledged in Hansen, that when faced with an adverse evidentiary ruling, defense counsel cannot allow damaging evidence to go unanswered in order not to waive an issue for appeal. But the prejudicial nature... I don't understand what that means. Didn't he make use of this and say, hey, over two hours, all the techniques used by the cops is vehement denials. I didn't do it. No, I'll be there. Never. He did. Why is it that effective argument? I'm not saying that that's not an effective argument. I mean, you have this extremely prejudicial video. And again, the prejudicial nature of this video is obvious to anyone who sees it. There's no reasonably effective attorney that would fail to file a motion to suppress after watching this video. You talk about the, gee, I didn't file this motion to keep it out because I didn't think the court was going to grant it. Is it really... Do we have to analyze it on the basis of simply the intent at the moment of counsel? Or can we consider... For instance, would this be a different case if defense counsel said, well, in retrospect, maybe it wasn't a good decision. But I thought, I didn't want to put my client on the stand subject to cross-examination, potential serious impeachment. And he had all these denials that I could use in closing argument as he did, so that's why I did it. Would you be making the same argument then? I mean, I understand what you're saying. He got this video in front of him, and the defendant's denying it. Well, what I'm asking is, under those circumstances, it would have been even clearer that this was a strategic determination by trial counsel. Right. Under what happened here, maybe it wasn't as clear, but... How do I put this? As someone who is a trial counsel myself, once upon a time, when I still had honest work, as I like to put it, you know, you're making all kinds of judgment calls and all kinds of thoughts about it. And counsel may have thought that he's not going to be able to get this barred, but there's no reason to think, in a relatively short trial, this pretty effective closing argument was the first time he thought of it. Was there any thought of this, for instance, when the case first started, that he might be able to take advantage of this tape and all these denials? There's no indication in the record that he ever... Is that a requirement, that there be an indication in the record, I suppose, is my question. No, Your Honor. But his words during, I mean, his words when he discussed, you know, this oral motion to object to this video... You mean his words after the fact, when his client has been convicted, he's thinking about a basis upon which an appeal might be made? No, but before that, during the trial, on the beginning of the second day of trial, when the state comes in and says, you know, I redacted some of the objectionable parts, and the court said, okay, well, do you, defense counsel, do you, are you objecting any further? And defense counsel was very fumbling with that. Counsel said, I don't agree to it, but I'm not going to object to it. So defense counsel, I mean, if defense counsel had this as a strategy, that would have been clear. Defense counsel would have been saying... Is it a requirement that that strategy be enunciated at that point? No, but it has to be reasonable. And when you watch this video, it is just not reasonable for counsel to allow this in, because, yes, it's helpful in the sense that he did not... Counsel, that brings me back to the initial question I asked you, which maybe I articulated wrong or you did not understand. My question was, if it had been objected to, would there have been any rationale for the trial court to let it come into evidence? Oh, to let it come in. That's what I intended to ask. Maybe I didn't. I'm sorry, Your Honor. I must have misunderstood. I'm trying to think if it had been objected to, how the trial court could have possibly allowed it into evidence. I don't think that the court could have. Had defense counsel made a proper pre-trial motion to suppress where there was a hearing and allowed the judge the opportunity to view the video and to weigh the questions back... Well, normally whatever the defendant says is admissible. As long as it's relevant and... Right, and or admissions against interest. But there wasn't an admission here, as I understand. No, he denied it. Correct. And so your theory would be that therefore it's irrelevant because all it does is expose your client to all kinds of information that wouldn't normally get in front of the jury, which is adverse to his position in the trial. That's your argument, right? Yes, Your Honor. Okay. Well, then I'll save that argument for Mr. Manchin. But as I understand it, you're saying you can't, as an attorney, think of any reason why the court would have allowed it in had it been objected to. Had it been properly objected to, correct. Like I said, as I mentioned, the video is extremely prejudicial. It presents Bates as a sexual deviant and fiend who is someone who is often engaged in these morally dubious sexual situations such as sleeping with a mother and a daughter or two friends, someone who is extremely experienced and active and whose strong sexual nature would be likely to overflow, leading him to assault women such as AP. And it's not just the content which is extremely prejudicial. It's also the language. It's extremely crass, extremely explicit, extremely offensive. Many of the sentences that he utters are sentences that I would not feel comfortable saying in a courtroom or hearing as a jury member in a courtroom. And this video went on for 96 minutes. Second, the video was inadmissible because it contained the detective's opinions about Bates's veracity. Why does that make it inadmissible? Why does that make it inadmissible? This court has written recently and emphatically that statements made by police during interrogation doesn't constitute hearsay. It's not that it's hearsay. It's that it's lay witness opinion. We also rejected that argument. Well, in the cases that the detective's opinions on interrogation video have been held to be admissible, like Muniz and Moore and Tice, in those cases the defendant changes his version of events throughout the course of the interrogation. So it makes sense that the detective's accusations that the defendant is lying. Now, what we said to be explicit, and this was a recent decision, was that the questions or comments or statements made by the police during an interrogation are neither lay opinion nor hearsay testimony but designed to put into context the responses of the defendant being questioned to the extent the trial court believes they are helpful in explaining. But in this case, no context is necessary. You don't need context to introduce Bates's denial of sexually assaulting anyone. That doesn't become nonsensical if there's no context. If you don't have first the detective saying, we know you lied, we don't believe you, we have your DNA connecting you to this offense as well as many other offenses throughout Springfield and coming down from Chicago, you don't need context to hear Bates's denial or to understand what the denial is. You also have to narrowly tailor the video. And those questions, you can narrowly tailor it so that you just hear him denying if that's the intent of the statement for this video. You don't need to have the detective saying that. In Hardeman, the last year's appellate court decision, that's the only case where the defendant's statement was consistent. He consistently denied in the interrogation any involvement in the shooting. The other cases where the detective's opinions were admissible, the defendant changes his story. So again, that makes sense that the course of context, that you need the detective's accusations to follow the course of the interrogation. But in Hardeman, the defendant remained firm and consistently denied, which is like this case. In that case, in Hardeman, the detective's opinions that the defendant were lying were not admissible. And so this case is much more like Hardeman than the cases where the detective's opinions were not allowed in. Third, the video is inadmissible because it contains the detective's statements about the multiple sexual assaults throughout the state with which Bates was going to be charged, and telling him that his DNA connected him to these. This evidence is not relevant because the state didn't present any evidence at all connecting Bates to these offenses. They're wholly unsupported allegations. They're vague. They lack detail. And these comments are also fear-mongering. They make convincing Bates kind of a personal thing for the jury who are members of this particular community and have experienced this rash of sexual assaults. But the lengthy video was extremely prejudicial, and it presented Bates as a sex fiend, substantially outweighing any minor possible probative value. The video was inadmissible and should have been properly moved to be suppressed. The counsel's failure to properly file this motion was therefore professionally unreasonable. Further, counsel's failure to move to suppress was prejudicial. This case was a battle of the experts. The only direct evidence connecting Bates to the assault on A.P. was a weak nine-loci DNA match. And despite the fact that... How do we know it was weak? Well, it's only a nine-loci match. There's multiple other things. You have the appellate court in Wright talking about how nine-loci matches... What other evidence was presented on this subject before the trial of fact here? What you do have that was before the trial of fact was the defense expert explaining that there were 486 other people that could have contributed the DNA profile that was found in A.P.'s anal swab. And also, Bates was charged with vaginal and oral penetration, yet his DNA, or this nine-loci match from him, was not found in the vaginal swab. It was found in the anal swab. And again, even though Wright was not before the court, that court does point out that nine-loci matches are misleadingly weak because they did a test of the Illinois offender DNA database. Is there any such evidence of that in this case? Just that there were 486 other possible people that could have... No reference to nine-loci matches. There was a reference to a nine-loci match. No reference to a nine-loci match being a weak indicator. No, Your Honor. But it's not a 16-loci match. It's not a full match of all the locations on the chromosome that were tested. Can you be more specific, explicit, better clarify what you consider a weak DNA match? Why is it weak, so I'm asking? Why is it weak? Tell me something other than because there's only nine-loci. That's like I, former prosecutor, former defender, didn't have this DNA stuff when I used to be in the courtroom. Right. So give me a little more explanation. I'll ask Mr. Manchin the same thing. Sure. Well, they tested it at 16 locations. Right. They couldn't find any alleles on one of them. So there's 15 remaining locations. And of that 15, the state expert says that there are multiple alleles, so there's multiple choices of the profile of how it would work out, at multiple of these 15 locations. We know from the state expert's report, just stated at 45, that there were multiple choices of profile at six locations. So we know from that that this was a nine-loci match. There's nine locations that fit Bates, and that Bates is one of the many possible options. There's also 486 other people that it could have been. What did the experts say about all this after going through what all that meant? Therefore, what did the experts say? Well, the defense expert says it's, you know, there's 486 other people that this could have been, so it's not definitively, doesn't definitively show that it's Mr. Bates. But the state's expert gives the giant numbers, the one in, I don't have them right here, but one in quadrillion people. What does that mean? It means that... If I'm not sure, what does that mean? Right, what it means is when the state makes their numbers, those huge numbers you see of how it can only be like one in a quadrillion white people could have been this, and things like that. Those numbers come from saying that we have a match on Bates' DNA, not a match, because Bates' DNA is consistent at 15 locations. They don't take into account the fact that there are multiple choices on six of these locations. So they don't factor in those choices. They don't factor in that Bates' one possible DNA that fits with the DNA that was found from the anal swab. They just do, they just say, hey, we found him consistent at 15, and they do the math from that. But defense counsel, the defense expert looked at it and said, which the state didn't deny. They didn't contend that the defense expert was wrong or pulling the wool over the jury's eyes or anything like this. They accepted it because it's before us also in the state expert's report that there were multiple locations, that there were six locations where there's all these different options for DNA. So... One of which includes the defense. One of which includes the defendant. But in this case also, AP cannot identify her attacker. There's no fingerprints. Bates doesn't give any inculpatory statements. And to strengthen this evidence, the state introduces this extremely prejudicial 96-minute-long interrogation video, as well as significant other crimes evidence. What about the other sexual assault involving CH and how strikingly similar it is So there's no question that is there that the defendant was the person who assaulted CH? The DNA says that that matches Bates' DNA. So we have the defendant sexually assaulting CH. We have them down to 486 on AP based on DNA. And we have a strikingly similar event, which the jury heard, that they consider with regard to propensity and also, it seems to me, under modus operandi, all of which points to the same guy. Why isn't that enough to say that this is an overwhelming case? Because in this case, not only do they have that, but the state also puts in this video. It's 96 minutes. It's so prejudicial. It distracts the jury from the evidence, the properly introduced evidence. They have this huge video, and again, in the video, they're getting the detective's opinions before the jury that the defendant did this. Three DNA cases, right? Three DNA cases. CH, CM, and AP? AP is the case for him that he's on trial. CH is the other crimes, and that's all the evidence that came in. And there's DNA matching to him in both of those? He's consistent with the DNA for AP. Right, I understand. And it matches. Defense goes crazy when you say match. Well, they're very specific terms. Is there any reason that the jury shouldn't have found or we shouldn't have found the circumstances of these crimes to be compelling according to a single perpetrator? And we know in CH, for moral certainty, it was the defendant. And given the singularity of this criminal behavior, why isn't that enough given down to 486? Maybe that isn't enough in itself to convict, but given everything else, to lead us with a conclusion that the evidence is compelling so that even if it was error to play the tape, that it's heartless error because our confidence in the verdict should not be undermined. The evidence against CH, I mean, he's not on trial for the crime against CH. I understand. He's on trial for the crime against AP. And I understand that the CH evidence can come in as propensity, but the jury needs to look at the evidence against AP. And I understand that that comes in and that forms part of their decision. But this video was just prejudicial. So if the defense's entire attack is on the DNA, which essentially it was, why doesn't it make sense that the defense counsel may have decided, I want those jurors to see my client denying every single allegation made against him regardless of what trick or effort the cops go to, regardless of what they use against him to try to get him to break. He adamantly denies his involvement in any of these cases. I want the jurors to see that, but I really don't want my guy up on the stand having to say that. So my only way of doing that is to allow the tape to come in and then attack the DNA. Why is that not a reasonable defense? Because there's a difference from hearing the jury hear the defendant's denial and watching this tape. This is 96 minutes of crass language, making the defendant look just like the sexual deviant they think. And they took the 12 jurors out of a monster. No, but this is really crass language. This video is really prejudicial. Like anything that people see on YouTube. It is beyond, Your Honor. This video is beyond that. Your time is up, but I want to ask you one other question that I'm not sure of. And that question is this. We talked about, we're assuming the desirability of not putting the defendant on the stand. Do we know, was there any discussion about any prior convictions he may have had that could have been brought out for impeachment? Anything in the record about that? At this moment, Your Honor, I am not sure, but I can check and let you know. Well, that's okay. I was just curious because that would be some further indication. Okay, thank you. Your time is up. You have an opportunity to address this again in rebuttal. Mr. Manchin. Good afternoon, Your Honors. May it please the court, counsel. Counsel. Mr. Manchin, I've been at this a long time. Almost 50 years, one capacity or another in the criminal justice system. And this is the first time I've seen a case where the state has offered statements of the defendant. And when I was done reading the statements or seeing the tape, I'm saying, what was in it that was incriminating? In one portion of the statement, the defendant makes remarks regarding the location or the building where these offenses occurred and being in that building. That's about the only thing I can recall that was. So show us familiarity with the building? Showing familiarity with the building and being in the building, contrasting with the rest of the statement saying he doesn't know anything about anything. Now a cynic might think, and sure enough, Ms. Filpi is that cynic, that the state wants to introduce all this just to dirty the guy up. And it well could be. But as Justice DeAlma says, this is a question of competency of trial counsel. But, you see, only after the state has offered all of this questionable stuff does the issue come up of why defense or how a defense counsel should react. Justice Garner asked Ms. Filpi, why is the state offering this? To put the defense statements in context. 96 minutes worth that he knew where the building was? Well, I submit that if the state had presented just that portion of the tape, the defense counsel would then come back and say, hey, we have to bring in the rest of the tape to put that in context. You mean to complete this factor or to open it all up? Yeah. I'm just suggesting that defense argument is that counsel was ineffective because he did not move to suppress. He did move to exclude the defense statement. It was on page 83 of Volume 12. He moved to exclude the defense statements. In our motion. In our motion. It says he did not file one before trial because he didn't think he could win on it. What did the judge say in respect? The trial judge has denied the motion. He did not give any reason for his denial of the motion. The grounds stated by defense counsel are virtually identical to the ones being raised now, that it's irrelevant, that it's overly prejudicial. There's one of the other problems here. This is a poor trial judge. I guess this was Judge Schmidt who was the trial judge at the time? I believe so, yes. Well, he was not well served when something this complicated was an oral motion in the day of trial as opposed to a motion to eliminate which a careful prosecutor, if he thought, gee, this is stuff I want to get in, could have filed well in advance of trial, so the judge could have heard. Is there any reason to think Judge Schmidt knew what was on the statement? Not that I know of. Well, I wouldn't think so either. So he's called upon to make a ruling, and like me, he barely assumed with his many years of criminal experience, there was something incriminating. Silly him. There was some in there that was incriminating, but more that was exculpatory, which gets back to the question of competency of counsel. Do you object to a statement that is in your favor? Why do you want to exclude a statement despite, you know, as Justice Jarmus says, a reasonable defense counsel saying, hey, I want the jury to hear this browbeating, these accusations, and my client's constant saying, I don't know anything. You're full of it. But Ms. Velpe's description is pretty accurate, isn't it? This is pretty crass stuff. There are portions of it that can be pretty crass, but within that portion is where he makes the admissions as regarding the building, being in that building and his knowledge of that building. So I think that the question in effectiveness, at the time of this trial, the law in effect in particular in Munoz and Tice, which are cited in my brief, was that the officer's question saying, I don't believe you, you're guilty as held, come in to put, you know, that you can't just excerpt the defense responses. You have to have the questions as well. So that the defense counsel not raising this Hardiman theory, which was decided a year after the trial. So the defense counsel is being accused of being ineffective. Well, in Whitfield, we differed with Hardiman anyway. Yes, that's correct. After this tape was played, did the defense counsel object, raise it to the trial judge and say, gee, judge, the officer heard it. This is bad stuff. No, he did not. Is this denial or some relief? No. The only thing that was said after it was played, came in oral argument, where the defense counsel says, hey, look, look at this tape. He's been browbeaten for 90 minutes. He constantly denies it. You've got to believe the denial. So I think that as far as ineffective assistance of counsel, that claim should be rejected. Because he did, in fact, make a motion to exclude that was denied. The law, in effect, at the time of that trial, was that the police questions could come in, even these quote, unquote, statements of opinion at that time. Because they're not testimony of the officer's opinion at trial. It's a distinction between an officer getting a participant, I believe the defendant's guilty, from saying during the question, you say, I believe you're guilty. This is what we have against you. You're guilty as heck. That is not opinion. That is not excludable. So I submit that. That assumes that the defendant made some kind of inculpatory statement. And the defendant didn't hear it. The clause as it came was that the statement was referring to being on. You don't need 96 minutes to do that. That could have been confined to a few minutes, it sounds like. It probably could have. It's almost like saying, I can't figure out what the prosecutor was doing. It sounds like prosecutorial misconduct for even attempting to get that in evidence. I'm having a hard time with it, to be honest. And to be honest with you, I had my questions as to why in the heck would this prosecutor present this just to get that little snippet in? Why does he present the whole thing? And yet your argument is that the defense counsel pretty much welcomed it because that gave defense counsel an argument which otherwise would not have been available for a closing argument. Correct. So defense counsel probably would have tried to get it into evidence even if the state had not done so. Yeah, the defense counsel is in a no-lose situation here. No-lose or no-win? Well, I think it's a no-lose situation. If it comes in, you get to have the jury hear the defendant's constant denials of doing anything despite this third degree he goes into that the police officers have been to. That, I mean, how can a defense counsel be incompetent for not ejecting to this evidence that is favorable to the defendant? Was there mention of the tape in the opening statement? I honestly don't recall what was said about the tape during the opening argument. I asked Ms. Sculpey about the defendant's record for possible use as impeachment. Are you familiar? I do not recall either, Your Honor. There wasn't any motion to eliminate addressing prior convictions on the basis of potential impeachment, was there? Not that I recall, but again, I just don't recall what was said at all about the defendant's record. Mr. Counsel, my problems with this statement that comes into evidence, you can assuage me if you can explain how powerful or weak, whatever the case may be, the DNA evidence was. I think I got, as to CH, it was conclusive. It was a match. It was the defendant's DNA that was located on CH, correct? Correct. But what was it on AP? As to AP, the defense expert admitted that the defendant was one in 480 trillion people that could have contributed to the DNA sample. He also said that using a different method of computation, it comes down, taking into effect, there's multiple possible sources on some of the alleles. It comes down to 148, 486. Say that last thing again. The defense expert said, yes, the defendant is 148, 480 trillion people that could have contributed. Okay, stop right there. 480 trillion people could have contributed. He was 1 in 480 trillion, yes, that could have contributed. He was 1 in 480 trillion. Correct. That's what the defense expert said. Is that otherwise known as a match? To anybody but the DNA experts in the Quay, the courts have phrased it that to anybody else that's a match. But the defense expert then also said that using a different method of computation, taking into effect that there are multiple contributors at certain places, it comes down to 1 in 486 that could have been the contributor. So the defense expert has two figures that he gives. The state expert just gave the 1 in 480 trillion as the... Did the experts address each other's opinion and explain that guy said different and he's wrong because something like that? No. As you know, experts often will be asked that and give an opinion. No, neither expert was asked to explain the difference and, in fact, on direct, it was when the defense expert said his calculation was 146. 486. Yeah. 1 in 486. 1 in 486, yes. On cross-examination, he admitted that he agreed with the state's computation of 1 in 480 trillion. So... How does he agree and come up with different? How does that work? I don't know either. He just, he really didn't explain how he came up with the original 1 in 400. Here's another question I have about addressing this concern. C.H., there was no dispute about the DNA at all. Correct. And it was A... But C.H. was the second victim. A.P. was the victim whose case was untried. Correct. This is Seidman County, Illinois. Why would the prosecutor choose A.P. instead of C.H. as the first one to go to trial? Does the record indicate that? No, it does not. Wouldn't it have been a lot easier if we had A.P. as the corroborating victim? One would think so. Whichever order you bring them in, you're going to have the same problem with... Well, then you'd have arguably disputing DNA testimony as to the corroborating victim as opposed to the other victim. But if the defendant is eventually going to be brought to trial for the action against A.P., you're going to have the same problem whether he's the first one brought or the second one was just my point. Harmless error analysis has got a lot of other technical language in it, but one of the questions is if we think, as Ms. Filpe argued, the video recording was bad and prejudicial and shouldn't have been admitted, one of the questions is should our confidence in the guilty verdict be undermined because the evidence was such that the jury might have been improperly persuaded or swayed by this improper evidence? Your Honor, I think that, as you suggested before, this falls in the category of overwhelming evidence. I mean, you have the two identical crimes within a month within the same general area, the exact same method of operation, neither victim knows the defendant, and the defendant's DNA is found at both locations. The evidence is overwhelming. I mean, the state's evidence here was that it was 1 in 480 trillion. Defense expert DNA was that it was either 1 in 480 trillion. 1 in 480 trillion if you calculate it this way, but 1 in 486 if you calculate it this way. I think that 486 calculation excludes the 6 in which he's included as one of the contributors. That's how she gets to argue the 9 low side. Yeah, I think that's what it does is that it excludes the 9. He doesn't even count those. Yeah, that's correct. He says, oh, well, there's only a positive, not match, but positive whatever. There's the 9 of the 50. Yeah. So the 6 are just being completely thrown out, even though he is actually, one of his DNA is included in those 6. That's correct. Okay. That's the way I read it. Which is how he can say it's 1 in 486, but he can also say it's 1 in 480 trillion. Correct. Because if you put those back into the calculation, now it's 1 in 480 trillion. That's correct. And the counsel has, in her brief and again today, criticized the 9 loci match. The problem with that argument is there was no evidence before this jury that a 9 loci match is suspect. Whatever has been presented in another case or brought up on appeal in a different case just simply cannot be considered here. Because never before the jury to say that, hey, this expert's testimony is suspect because a 9 loci match is suspect. And so there is no weakness based on a 9 loci match because there's just no evidence that a 9 loci match is suspect. What we have here is two virtually identical cases within the same geographical area, same method of operation, in or through by cutting a screen, attacking the victim with a knife, leaving, telling them to count, and then neither knowing the defendant but his DNA there. So I think that this, that any prejudice in terms of ineffective assistance of counsel or a harmless error, however you want to phrase it, just simply does not, is just not there because the evidence is overwhelming that the defendant was guilty. Thank you, Mr. Manchin. Thank you, Anders. Ms. Philby, any rebuttal? I'd like to correct something about the DNA again. It's not one in 486. It's that there are 486 other possible contributors. And the six multiple loci, those were not excluded from this map. They are taken into account when the defense expert came up with this 486 other profiles. And what's the difference? Where it comes from is at six of these locations, there's multiple alleles. So the 486 number is when you take, like let's say on the first location, there's A, B, and C as possibilities. At the second location, there's another A, B, and C. The 486 is you take all those possible combinations, A, A, all the way throughout the gene genome. A, B, all the way throughout. And you look at different combinations where there's those multiple alleles. And that's where the 486 number comes from. So it's 486 other possible profiles. And the 400... But you only count those for which that trail runs all the way through. All the way through, yes. So you do exclude, then, those for which it doesn't go all the way through. So there's only one choice at nine of the locations. So you use those nine, and then you use the different... And that one choice was the defendant. And 486 other people. They all match up. The first nine. They all match at that first nine. And actually, all those 486 people have the exact same match of 1 in 480 trillion that the state came up with. All 486 of those other people match at that amount. And the defense expert does, in fact, talk about the difference between how the state got their number and how he gets his. So if you go back and look at that testimony, the defense expert explains it. But doesn't the defense expert testify during the defendant's case in chief? Did he not? He did, Your Honor. Okay. So that means the state's evidence had already been presented on DNA. Yes, Your Honor. As this discussion has just revealed, this is some technical stuff. Yes, Your Honor. If the part of the argument is to the jury, hey, don't believe the state's witness because, you know, I'm saying 1 in 486 for these reasons and the state said 413 trillion or whatever. If this is going to be a serious argument designed to undercut the state's testimony, how is the jury supposed to evaluate it without having the expert explain why the state's witness was defective or deficient in some fashion? The defense expert does go into the math. And it's not that they're deficient. It's just they're calculating it in different ways. Because, like I said, all 486 of these guys match at that amount. It should be calculated in a different way. And, therefore, mine is deserving of your acceptance and his is not. Wouldn't that be what you'd want to say? Yes, Your Honor. Well, the reason you're, in effect, arguing that to us, but this is technical stuff. I'm not even sure if we said, so does that mean, Mr. Expert, the state's expert's testimony was not acceptable or believable? I'm not sure he'd say that's right, would he? They're not inconsistent, though. I know you're saying that you're trying to get the jury to believe one or the other, but they're exactly consistent. It's just explaining the math. I apologize. It took a lot of your time, and you still have some time on rebuttal if you wish to address some other points. Briefly, Your Honor. Counsel stated that the trial court didn't give a reason for denying the oral motion, and that's not quite right. Counsel said that they denied it because it was, quote, less than the 12th hour, and that the trial court hadn't seen the video. By the way, this is one other strange aspect of this case, and I apologize I didn't ask you this before, but your argument on ineffective assistance of counsel is that trial counsel didn't object, but he did.  The argument you're making would be an argument where the state offered this, and counsel was silent throughout, but here, before the state offered it, he said, yeah, I don't think it should come in, oral motion, and the trial judge overruled it, but still, don't we have, I mean, hasn't that threshold been crossed that you say defense counsel need to do it? No, Your Honor, because, as I said, the court denied it because it was so late because they didn't have a chance to watch the video. Well, I'm talking about at the time it was made. This is after the trial's over. At the moment that the state was going to offer the video, didn't he say, I object? He said, I object because it shows Bates in an intoxicated and embarrassed condition. Okay. And the next day, the trial court denied the motion, the oral motion, saying it's beyond the 12th hour. I didn't get to see it. The beginning of the next day of court, the prosecutor comes up and says, you know, I edited the video and I took out the objectionable bits that defense counsel objected to, and at that point, defense counsel says, I think it'll be allowed. I'm not saying I agree to it. There's this kind of fumbling back and forth. He says, I'm not keen on it, but I think it'll be allowed. But that's because the trial court the day before overruled his objection, isn't it? Possibly. It's just not clear from the record, right? But the state says that he took out the parts that defense counsel objected to. So on that record, we have to assume. So, in fact, it wasn't a bad strategy because by waiting until the last minute, you wound up getting the state to voluntarily take out stuff that otherwise the judge had already said was going to be allowed. That bit. But counsel's ineffective for not filing this formal motion because the whole video, I mean, 96 minutes of irrelevancy, that's what should have been kept out. You just used an interesting term, formal motion. Didn't he object before it was played to playing it? He objected in the middle of trial. Well, the trial hadn't yet started, had it? It had. It was in the middle of the state's case in chief. When the state said we're going to play this and he objected? When defense counsel, yeah, when defense counsel made the oral motion. But that's a different, you know, maybe that should be the trial court erred by denying this would be an argument. But the argument is it was ineffective assistance because he didn't object, but he did object. Well, the reason that's not the argument is because there's a lot of deference to a trial court's management of its own trial. But in this case, I say formal motion because you need to give the trial court an opportunity to view the video and able to adequately balance the prejudicial effect and the probative value and to look at the relevance. As you mentioned, the trial court didn't know what he was ruling on, and that's what his words say when he denies it. He says, I haven't seen the video. And this is in the middle of the trial in response to the oral motion. That this is beyond, this is less than a 12-hour. It's like the 10th second. This needed to be made a long time ago. For these reasons, is there no more questions, Your Honor? For these reasons, we ask that this court reverse and remand for new trial. Thank you, counsel. Thank you, Samantha. I'm going to advise there have been reasons.